We'll hear argument first this morning in Case 11-965, Daimler AG v. Bauman. Mr. Dupree. Mr. Chief Justice, and may it please the Court. The Ninth Circuit held that Daimler, a foreign corporation, is subject to general jurisdiction in California, and thus may be sued in California on any claim arising anywhere in the world. The Ninth Circuit reached this conclusion by attributing to Daimler the California contacts of a Daimler subsidiary, Mercedes-Benz USA, a separate corporation that respects all corporate formalities and that is not Daimler's alter ego. The Ninth Circuit's approach violates due process. Scalia. Do we have to reach that question? I mean, I guess the Ninth Circuit must have been interpreting the long-arm statute of California, right? That's correct, Justice Scalia. Now, are there – were there California cases that disregarded the corporate form? California respects the corporate form. The Ninth Circuit applied what appears to be a Federal common law of agency that the Ninth Circuit admittedly developed solely for purposes of the jurisdictional inquiry. But the jurisdictional inquiry is conducted on the basis of the California statute, isn't it? It is, but at the same time, the California statute extends to the limit of due process. And so what the Ninth Circuit did was it construed what the permissible outer bounds of the due process clause was in this context. I see. It's California's reference to the outer bounds of jurisdiction that causes this to be a constitutional case. That's correct, Justice Scalia. There's nothing in the Constitution, is there, that would prohibit a State from adopting a rule that a parent is responsible for any acts of a wholly owned subsidiary? Well, Mr. Chief Justice, there may be a constitutional limit. Certainly to the extent that, say, California adopted a rule that said for purposes of some sort of liability, we are going to disregard the corporate form, I think that could pose due process concerns to the extent that it is purporting to override, say, the corporate law of Delaware. Well, even on a prospective basis, your brief talks about notice and fairness and predictability. But if California said going forward, this is the rule that we are going to apply, is there any constitutional problem with that? I still think there would be, Mr. Chief Justice. In other words, I take Your Honor's point about fair notice. If California said going forward, this is the rule we are going to apply. But at the same time, I'm not quite sure what in the Constitution would empower, say, California to essentially override, say, Delaware's corporate law and say for our State purposes we are essentially going to rewrite the corporate DNA of a corporation that's chartered in Delaware in order to treat. We permitted that in Container Corp. I beg your pardon, Your Honor? We permitted that in Container Corp. We permitted California law to tax the parent California corporation for the earnings of all its foreign subsidiaries. And we said the Due Process Clause wasn't offended by that. Well, Justice Sotomayor, typically this Court has applied a less rigorous due process standard in the tax cases than it has in the personal jurisdiction cases. If one were to look at, say, Goodyear or McIntyre, of any of this Court's more recent jurisdictional decisions, it typically takes a much more rigorous view of the Due Process Clause's limits on a sovereign's ability to adjudicate matters that arise outside the form than it has in the tax context. We would never get to this question if you hadn't conceded that there is general jurisdiction over the U.S. subsidiary over, what is it, MBUSA. Well, Justice Ginsburg, I respectfully disagree that we conceded the point below. I'm not sure, frankly, that we could concede something like that on behalf of a different corporation that's not a party to this lawsuit. But it is true that we focused on the attribution question in the Ninth Circuit. And at the end of the day, I don't think that that point affects the outcome in this case, because they were not attributable. Ginsburg, if they were not attributable, then that would be the end of it. If there was not general jurisdiction over MBUSA, that would be the end of the case, wouldn't it? Yes, it would. That would be one way to resolve the case. Another way to resolve the case would be to resolve it that way, since you didn't challenge the general jurisdiction over the subsidiary. Well, again, we did not argue that point. Instead, we focused on the attribution issue, but at the same time. Mr. Dupree, I'm sorry, please. I was going to say, Your Honor, at the same time, I do think that that notion, that MBUSA was subject to general jurisdiction in California, was necessarily part of the Ninth Circuit's holding. So I do think it is properly preserved for this Court's review if the Court elected to resolve this case on that ground. And, Mr. Dupree, even if you waived that point, if I understand it correctly, you did not waive the point that even with all attribution in the world, there's still no general jurisdiction over Daimler. In other words, you could attribute all MBUSA's contacts, and you still would not have general jurisdiction over Daimler. Is that right? Justice Kagan, that is exactly right. So in that sense, it really doesn't depend on the attribution standard, all these hard questions of is it an alter ego test or is it an agency test, and how does the Constitution relate to State law, because we could apply any test we wanted, and there still wouldn't be general jurisdiction over Daimler in California. Justice Kagan, that certainly would be an acceptable route for this Court to resolve the case. And Your Honor has it exactly right in that even if one were to attribute the constitutional contacts of MBUSA to Daimler, you would still be left with a joint enterprise that plainly is not at home in the State of California. It would still be a German corporation headquartered in Stuttgart that draws only approximately 2 percent of its overall vehicle revenue from California sales. So, yes. Scalia, is that a reason? Scalia, how do foreign countries resolve this attribution question? Would we be standing alone, or are there a lot of other countries that assert jurisdiction over the parent if there is general jurisdiction over the sub? By and large, Justice Scalia, most other countries respect the corporate form, and that includes parent subsidiary relations. By and large, who are the small? I'm not aware of anyone who disrespects it. And, in fact, our amici talk at length about how California's exercise of general jurisdiction in this case would not be appropriate in virtually any other nation. I'm, frankly, not sure where what the Ninth Circuit did here would be viewed as tolerable. How do we deal with that? That's what's – I mean, it's in your interest to argue that – tell me how to deal with this. It's perhaps true, I think it's true, that a State doesn't have to allow companies to have wholly owned corporations. Under the Constitution of the United States, nothing says they do. Or a State could say, wholly owned corporations, well, there's no limited liability. Or they could say in certain kinds of accidents there's no limited liability, et cetera. You see, they have lots of choice. So what really seems to have been going on here is the Ninth Circuit, from your perspective, just really misstated California law by out to lunch. When they say we want it to be as broad as the Constitution, they don't mean because we could get rid of limited liability, that that's what we do. So how can we deal with a circuit court that seems to seriously misstate the law of a State? Well, I think the way this Court should deal with the Ninth Circuit in this case is simply to reverse it, Your Honor. I think one of the— Well, I understand that that's what you would like as the bottom line. I would like to know the chain of reasoning. That's – the chain of reasoning, Your Honor, is simply that California, like all States, generally respects the corporate form, certainly as with regard to liability determinations. In fact, this is a point that Professor Brillmeier makes at length in her amicus brief, where she says that it is anomalous for a State, on one hand, to respect the corporate form as to liability determinations, but then when it comes to making these sorts of personal jurisdictional determinations, it applies a completely different standard. So I think that if I'm not wrong— But suppose we had a case of an accident on a California highway, injuring California people, and they sue, charging that the Mercedes-Benz was defectively manufactured. Would there be jurisdiction over both the parent and the sub in that situation? If it were the case, Your Honor, hypothesized, I think there may well be specific jurisdiction available, depending on whether Daimler purposefully availed itself of the California form. What does that mean? I mean, they certainly wanted to have its car sold in California. Right. What this Court has said in its opinions in Asahi and then, of course, in McIntyre is that you look at whether the corporation targeted the forum. And in Asahi, Justice O'Connor's opinion identified several facts that could support such a finding. For example, whether the parent targeted advertising at the forum, whether the parent designed a product specifically for use in that forum. And, of course, this Court has said repeatedly that questions of specific jurisdiction are highly fact-dependent. And so in Your Honor's hypothetical, I think what the plaintiffs would do to establish specific jurisdiction over the foreign parent would be precisely to attempt to amass evidence showing that Daimler targeted the forum where they intend to bring the suit. Ginsburg. But there was an injury in the forum, and it was caused by defective manufacturing abroad. That's a typical basis for jurisdiction under long-arm statute. Well, certainly courts have exercised specific jurisdiction in that situation, but of course, as this Court's ruling in McIntyre illustrates, that's not necessarily always the case. And there may, of course, be situations where a product does cause injury in the forum, yet the foreign parent is not necessarily subject to specific jurisdiction in that forum. Kennedy. Well, how would you answer Justice Ginsburg's question if you were writing the opinion in your favor? Would you say that in the hypothetical, Daimler-Chrysler put in motion a course of events that caused an injury in California? I mean, is that the way our jurisprudence works? Well, if you're going to answer the hypothetical in the opinion, how would you do it? What would you say? Well, I think I would go back to what this Court has articulated, first of all, as the standard for specific jurisdiction, which is purposeful availment or purposeful direction.  Kennedy, but Daimler has purposely availed itself of California jurisdiction by establishing the sub that operates there, by establishing Mercedes U.S. that operates there. Well, Mercedes. So creating a subsidiary is not availing itself of jurisdiction? Well, Justice Kennedy, I think in some cases a subsidiary's work could give rise to specific jurisdiction, but I think that's not necessarily true across the United States in all cases. Kennedy, I agree, and I'm asking what is the rationale that you would use to answer Justice Ginsburg's hypothetical in the opinion for the Court that is ruling in your favor? The answer I would give is that, in Justice Ginsburg's hypothetical, the foreign parent could be subject to specific jurisdiction if it purposefully availed itself of the forum, and that very well could be an inquiry that turns on the subsidiary's activity. And my question is whether or not by creating Mercedes U.S., Daimler didn't purposely avail itself of the forum. I don't think it did, Justice Kennedy. Because? Because I don't think there is any evidence in this record that suggests that by creating a subsidiary that does business generally, it was purposefully targeting California. Mr. Dutri, do you agree with me? If we agree with you that the test should be whether the subsidiary is an alter ego of the parent, would that depend on the law of the particular State in which the suit is brought, or would it be based on some general understanding of alter ego liability? Justice Alito, I think the best test would be to look to State law for guidance, precisely because that is the law that commercial actors throughout our country typically would look to to determine whether or not they might be in a veil-piercing situation. That would mean the due process would mean something different potentially in California and New York, for example. Wouldn't that be rather strange? Well, I'm not sure, Your Honor. Certainly, this Court in other due process contexts has looked to the substance of State law to inform its judgments. For example, in determining the scope of protective property interests, in punitive damages cases, it's looked to State law to determine the constitutional boundaries. Sotomayor, where else have we done it in the personal jurisdiction context, defined the limits of the due process, Federal due process, in accordance with State law? Well, I'm going to create tests in International Shoe and Burger King separate from State law? The test this Court created in International Shoe, I think, is probably best characterized as a Federal common law test. I think that this situation is not quite analogous, precisely for the reason I mentioned in my answer to Justice Alito, is that commercial actors and lawyers and parties throughout the country typically look to State law for guidance. And if this Court were to adopt a general Federal common law standard, under which I think we would still prevail, but even so. Sotomayor, what do we do with all the amici brief that points to countless articles that talk about the corporate veil piercing as the most arbitrary of State laws out there? Well, I'm not sure I know how corporations get any sense of comfort from a law that is so irrationally applied according to some. Well, I think some of the amici candidly may overstate the purported confusion. At the end of the day, veil-piercing law is certainly well settled and embedded in this country's legal traditions, and I think it is sufficiently capable of precise application in advance. Corporations deal with that standard on a day-to-day basis, and so although I take Your Honor's point that at the margins there may be room for debate as to whether a veil should be pierced in a particular case, I think by and large it's a general standard, it's a familiar standard, and it's a workable standard, and it's a standard that people look to on a day-to-day basis. Scalia Counsel, I've been looking for the text of the California jurisdiction statute. Where is it? I mean, you know, that's what this case is all about, isn't it? Is it in your brief, is it in the Respondent's brief, is it in the government's brief? I can't find it, aren't they? Well, we'll provide the site to Your Honor. It's a period. I don't want the site, I want the text in front of me right here. That's what briefs are supposed to have. Right. I will. All of the significant statutes that relate to the case. Right. I will provide the site to Your Honor on rebuttal. It is the California Civil Code. I never have the California Civil Code. Never mind. You're saying it's not in the briefing. It is in the briefing. We did not reproduce it as a separate addendum at the beginning, but I believe it is in the briefing, and I will provide Your Honor with a precise page site. But it does provide for the exercise of jurisdiction to the limits of due process. That's exactly right, Justice Ginsburg. It simply says that California may exercise long-arm jurisdiction consistent with the jurisdiction and to the limit permitted by Federal due process. That's all the statute says, Justice Scalia. I will reserve the remainder of my time for rebuttal. Thank you, counsel. Mr. Kneedler. Mr. Chief Justice, and may it please the Court. As several questions from the Court suggest, the Due Process Clause itself does not Rather, such rules are the province of the positive law that creates the corporation and other substantive laws, such as agency, that defines the relationship of that juridical person to other persons, and those rules are the ones that the corporations themselves rely upon and that others who deal with the corporations rely upon. Could you tell me why we just don't rely on the tests we apply in the tax cases? It's a Federal test, and it says if you're functionally and economically tied together and you control the other entity, the parent controls the subsidiary, your earnings are subject to the Due Process Clause. And can be taxed by an individual State. It seems like a fairly simple test. And if you break down the complicated California test, really, that was the essence it was getting to. So why do we go to the vagrancies of State law, and why don't we just do the true and tried? In the instance you're talking about in taxation, and this is related to a question the Chief Justice asked, the Due Process Clause does not itself prohibit a State or the Federal Government from attributing substantive liability, for example, from a subsidiary to a parent, or in the case of taxation, of choosing to look at the entire enterprise of which the parent corporation is the head. But those are the results of deliberate choices by the lawmaking organs of the State, the State legislature, or when Congress does it, the Federal Government. They do not reflect a general determination that in all circumstances the acts of an agent or the acts of a subsidiary should be attributed to the parent. In fact, the general rule is quite to the contrary. Alito, in the situation of individuals, does the due process rule regarding taxation of individuals by a State align with the ability of somebody to sue that person in the State? Somebody — for example, if someone is a partner in a law firm that has offices all over the country, they may be paying income taxes in many jurisdictions. Are they subject to general jurisdiction? If there's a — if somebody who works in D.C. and never goes to California but has to pay some income tax in California, are they subject to suing California for any claim that arises against them? No, they are not. And for the taxation, there has to — for taxation to begin with, there has to be some nexus between the individual and the State. The rules that I think Justice Sotomayor was talking about in the Federal Tax Code  And in most of those situations, certainly in taxation among the States, there is an apportionment formula. Yes, the overall income may be lumped together for purposes of the initial step, but then there's an apportionment formula that says, in the Mobile case that's cited in the briefs, for example, that Vermont can only tax so much of it, that portion that is fairly attributable to Vermont. So in that sense, it's analogous to specific jurisdiction. You're looking at – you're coming up with some formula to tie the taxation to the State that is imposing the taxes. Kagan. Mr. Kneedler, what do you think about this? You know, as I've been looking through these cases, it seems to me that all these attribution issues and the conflict about attribution arises because courts generally have an improperly broad understanding of general jurisdiction and don't quite understand the distinction between general and specific jurisdiction. If the courts – if the Court here had understood that general jurisdiction applies when a company is essentially at home in a place, would any of these questions have arisen? Kneedler, Probably not. The Court of Appeals, I think it's page 23 of its opinion, says that the reason that it looked to the question of whether the in-State activities of MBUSA were important to Daimler was that the importance is a measure of the presence, meaning essentially doing business within – within California. And as we point out in our brief, the Ninth Circuit's approach to this traces back to early New York cases that address the question of doing business at a time when doing business was. Ginsburg There is a very substantial argument that there was no general jurisdiction over the subsidiary, but that was not contested. Kneedler, Yes.  And parties can always consent to jurisdiction. Kneedler, Yes. No, but I think in a broader matter, and also I think the point that Justice Kagan made earlier, that even if MBUSA was subject to general jurisdiction or if we – if that's accepted for these purposes, that doesn't mean that Daimler – you wouldn't attribute MBUSA's jurisdictional status to Daimler. You might attribute its contacts, if the appropriate rules for attribution of contacts were. Kennedy Just as a way of getting you to state your general theory of the case, let me ask you, do you have a recommendation as to whether or not we should remand this case? If we accept your theory of the case, which I'll let you explain, does that require  Kneedler, It does not. In our view, and that is because, yes, in our view, it's proper for the Court to look to background principles of corporate law, at least as a starting point or as a presumptive matter. And in this country, corporate separateness under which a parent is not liable for the acts of a subsidiary is the general rule. There are established exceptions to that, traditional exceptions, the alter ego exception, and the situation where a principal is responsible for the acts of an agent. The attribution on those bases, because they're traditional, would not offend traditional notions of fair play and substantial justice under the Due Process Clause. Here, Respondent does not argue, Respondents do not argue for an alter ego was satisfied. And as for agency, there is no argument here that traditional agency requirements are satisfied. Kennedy, if you have the universe of agent, principal, and independent contractor, is the subsidiary the latter or is it something, is it some third animal? Kneedler, I think in this case, again, we don't have any reference to culture at all. Kennedy, if you have a corporate parent and a subsidiary, do we usually think of the subsidiary as an agent? Kneedler, no, you do not. What do we think of it as, an independent contractor or just something else? It's an independent entity. It may be doing work for the parent or it may not. In this case, page 179A of the Joint Appendix, the agreement between Daimler and MBUSA specifically provides that MBUSA is neither a special nor a general agent. It says that MBUSA cannot act on behalf of or bind Daimler, and it's not a fiduciary. Ginsburg, you wouldn't have any doubt, would you, in the hypothetical that I posed? A Mercedes-Benz car causes an accident in California. It's alleged that the accident was the defective manufacturing of that car. California people are injured. There would be jurisdiction in a California court. Kneedler, I would think so, particularly given the volume, given the agreement in this case which obligates Daimler to market throughout the 50 States. And the volume of sales that are directed to the United States, some major portion of which is expected to be and intended to be in California, I don't think there would be any question that California would have specific jurisdiction. Kagan. But of course, that just points out the difference between specific and general jurisdiction, that Daimler might be found to be ‑‑ there is jurisdiction over Daimler in a case which involves the blowing up of a car in California, but not over something that's not related to any of its contacts in California. Right. That is ‑‑ that is the ‑‑ the major ‑‑ that is the major difference. If I could make one ‑‑ What would have to be true for MBUSA to be Daimler's agent with respect to general jurisdiction? How would the facts of this case have to be changed in order to bring this within an agency principle? I think ‑‑ I think MBUSA would have to be acting on behalf of Daimler. One step in that direction would be if Daimler consigned the cars to MBUSA, and that ‑‑ and MBUSA held itself out as the sales agent. Here, the cars were sold to MBUSA in Germany and sent to the United States. But if there was an agency relationship, that doesn't necessarily mean that Daimler would be at home in California or whatever. I mean, in most agency relationships, titles stay with the principle. So I don't know. Or when it doesn't, it transfers to the agent, but for the benefit of the principle. So I don't know what the sale in Germany has to do. Well, under this agreement, MBUSA is ‑‑ acts independently. It does not act as a data‑based director. Well, it seems an odd thing to say, given the page and a half that the lower court went through on the various ways in which Germany controls this subsidiary. It appoints all its officers. It approves all its operating procedures. It approves all of the people it hires and fires. It seems like there isn't much left. I don't think it was a question. Okay. You can respond. Those are contractual undertakings. They are not the manifestations of agency. The agency would require that Daimler control the day‑to‑day operations of this subsidiary, and at page 116A of the Petition Appendix, the district court says there is no evidence of that whatsoever. Thank you, counsel. Russell.  I'd like to begin with the question of what's in this case and what isn't, because the fact pattern in this case gives rise to multiple complicated questions, only two of which have been adequately preserved in this case. And one of the questions that's not in the case, Justice Kagan, is whether or not if MBUSA's contacts are attributable, they are sufficient to establish general jurisdiction. This case has been in litigation on the personal jurisdiction issue for eight years. Throughout that period, we have argued that if MBUSA's contacts were attributed to Daimler, they were sufficient and kind in quantity to support general jurisdiction over Daimler itself. It's not as if we have a— Ginsburg. If a Mercedes-Benz vehicle overturned in Poland and injured the Polish driver and passenger, suit for the design defect could be brought in California? That's right. And if you think that the answer to that is wrong, it's because of the argument that Daimler did not preserve.  Yes, but, Mr. Russell, it's usually, it doesn't lead to good results when you assume something that's obviously an error. You know, it leads you to go onto a road that you wouldn't otherwise have gone onto and get to a destination that might be improper itself. So it's bad practice, and I understand your, you know, idea about they didn't argue this, they didn't argue that, but to assume something that's obviously a fallacy as your basis for a decision is not likely to lead you to a good outcome. Well, that might be a reason, then, for this Court to dismiss this case as improvidently granted. A cert petition, a grant of cert, it really shouldn't be a get-out-of-jail-free case. Really, suppose I think that this was crying out for an on-bank. After you got your decision, we decided Goodyear, didn't we? And yet, even though there's no effort to reconcile the case with Goodyear, as there couldn't be, we hadn't decided it, by the time we decided it, it still could have been taken on-bank. That's right. But I guess we have no power at all to force the circuit, although that's what they're there for, to consider such a matter on-bank. That's because Petitioners didn't raise that question on-bank. They filed an on-bank petition after Goodyear came down. And they didn't say anything about it? They did not raise these questions. But, Mr. Russell, they did talk about Daimler wasn't subject to general jurisdiction. They didn't contest MSMBUSA's being subject to general jurisdiction, but they said Daimler isn't subject to general jurisdiction. So, you know, they didn't make the precise argument that they should have made, but they basically put the question at issue, is Daimler subject to general jurisdiction? Answer, no, Daimler is a German corporation. If it were subject to general jurisdiction in California, so, too, it would be subject to general jurisdiction in every State in the United States, and all of that has got to be wrong. Russell, with respect, Justice Kagan, it's not as easy as you seem to think it is. Let me give you an example. In Perkins, this Court cited a prior case as a quintessential paradigmatic example of general jurisdiction called Barrow Steamship Company v. Kane. And in that case, it approved this Court, approved the exercise of general jurisdiction in New York over a British steamship company for a tort that occurred in Ireland based on the fact that it had an office run, actually, by another company, a mercantile company. Ginsburg What was the year of that decision? Russell That was 1898, but this Court Ginsburg Yes, but the thinking about jurisdiction has changed enormously since then. Russell But my point is that this Court in Perkins, which is quite a long time after International Shoe, cited to Barrows as an example of a paradigmatic example. Ginsburg If there was ever an example of a corporation being at home in a particular place, it's Perkins v. Bengay. It was a Philippine company that was shut down entirely. It was World War II. To the extent the company was operating at all, it was in Ohio. It was not able to operate in what otherwise would have been its home base. So everything that the corporation was doing occurred in Ohio. Russell Justice Ginsburg, just to be clear, I'm not saying that this case is like Perkins. I'm saying that in Perkins, a post-International Shoe case, this Court embraced the result in Barrows, which is a case quite like this one. Scalia And, Marcell, I'm still hung up on why we have to confront a Federal constitutional question. It doesn't seem to me that a State statute which says we want to exercise jurisdiction to the extent the Constitution permits, I don't think that invites a Court to restructure standard State law and to say we're not going to observe the corporate distinction. I guess you would have to say we can hold the individual shareholders of a corporation liable, because that might not violate the Constitution. I don't think that when California adopts this statute, it means to restrict the individual shareholders of a corporation. It doesn't change its standard law regarding corporations, regarding individuals, and so forth. Why should we assume that? Because Petitioner, again, didn't make that argument either. Breyer Look at the odd thing. It might not violate the Constitution. I mean, it's the same question, but it is bothering me, too. It might not violate the Constitution of the United States for a State to say we don't have limited liability in respect to the subsidiary corporation of a general corporation. It's very unlikely to do that. It's going to be a big problem to get investment in that State, but it might not violate the Constitution as here. To say, you know, we are in California not going to have subsidiaries when a plaintiff comes in and sues on the basis of something that happened outside the country. But we will have it when, in fact, he sues on something that happened in California. Now, a State could do that, I guess, but it's pretty odd. And if you look what the Ninth Circuit said in its opinion, it never referred to California law directly. It's all Ninth Circuit cases or Second Circuit cases. The only thing it says about California is probably something that was quoted in a Ninth Circuit case, something like that. So what am I supposed to do, because State law is up to the State? How do I handle that? This case has been litigated under the interpretation of the California statute that says that California intended, notwithstanding what rules it applies for liability, to exercise personal jurisdiction to the furthest extent permitted by the Constitution. And here it's not that difficult a question. Here the question is, if Petitioner would have been subject to general jurisdiction in California had it conducted the same operations through a subdivision in the case, does the Due Process Clause give it a constitutional right to avoid that jurisdiction simply by conducting those same operations through a wholly owned entity? In other words, if California has abolished, I mean, California says there is no corporate insulation. A corporation, when it tries to work through a subsidiary, that subsidiary has unlimited liability from lawsuits in California. Is that what you think California law is? California wants to go as far as the Constitution would permit. We're not asking you to go as far as the Constitution would permit. The answer, then, to my question is yes. You think right today in California the law is there is no, there is unlimited liability for a corporation that is a subsidiary of another. Not that there is unlimited liability, but that they can exercise it. Alito, you can bring a lawsuit, unlimited liability. Because the statute at issue doesn't speak to liability, it speaks to personal jurisdiction. Mr. Russell, is it clear that the California law regarding corporate liability would apply to all of your claims? You have Federal claims, you have Argentine claims, isn't that correct? That's correct. But California law controls personal jurisdiction. But it doesn't necessarily control corporate liability, let's say, with respect to the Argentine claims? No, it certainly wouldn't. The choice of law principles would almost certainly point to Argentine law. But why should we, now that the Federal claims are out, I mean, when you started this suit, you had a claim under the Alien Tort Statute, you had a claim under the Torture Victims Protection Act, but now those Federal claims are out and we're left with a claim under California law and Argentinian law. Why should a Federal forum exercise supplemental jurisdiction over those claims once the Federal claims are out of the picture? Well, certainly we agree that if this case were remanded to the district court, it would have discretion to refuse to exercise supplemental jurisdiction. I would be arbitrary for it to exercise personal jurisdiction when there's no Federal claim and the case involves foreign plaintiffs injured abroad allegedly due to the activities of a subsidiary operating abroad. Ultimately, we don't think so. I think you would have to take into account this case has been in litigation for 8 years already. I think that's a substantial reason for the Court to want to allow the case to continue. I recognize that we would have a very hard time appealing from a decision that refused to exercise supplemental jurisdiction, but again, on the question that the Court actually granted cert on and which was actually preserved here, I do think that the Court could simply hold that, look, attribution of contacts between a wholly-owned subsidiary and its parents is not so unreasonable as to violate the Constitution. At the end of the day, the due process question is whether the defendant has sufficiently availed itself of the benefits of doing business in the State to warrant an exercise of jurisdiction. It can do that either directly through a substantive account. Ginsburg. But that has to be just sufficiently purposeful availing. Those are all specific jurisdiction questions and not general jurisdiction questions. With respect, I don't think that's correct. Justice Kennedy's opinion for the plurality in the Castro, for example, identified the underlying premise of both general and specific jurisdiction and availing oneself of the benefits of being in the State. And could you distinguish the two by saying general jurisdiction means it's equivalent to residence for an individual, it's where you're at home. And general jurisdiction was much broader in the days before long-arm statutes. But now that we have specific jurisdiction, so you can sue where the event occurred, just as specific jurisdiction has expanded, so general jurisdiction has shrunk. I understand that there are very serious and important questions with respect to what it means to be at home in a State, and that if Petitioner had raised those arguments below, it might actually have prevailed. But this Court ought not to forgive that waiver in a case like this, and it ought not to decide that question when not only is the argument forfeit, but it's barely been briefed in this case. Kennedy, I understood the concession as being that if Mercedes were the only corporation involved in this dispute, there would be specific, sufficient contacts. That doesn't tell me anything about Daimler. I'm not so sure that this concession is that troublesome for Daimler. No. There's been one concession, which is that MBUSA's contacts are sufficient to subject MBUSA itself to general jurisdiction. There's been one forfeiture. So how does that answer the question about Daimler? Well, because there's been one forfeiture as well. And that is, we've argued for 8 years. There's been one forfeiture as well. We have argued for 8 years that if you attribute the contacts of MBUSA to Daimler, those contacts are sufficient to establish general jurisdiction over Daimler. They're sufficient to satisfy minimum contracts. Were any claim arising any place in the world? That's right. That's been our argument. They could have said, no, that's not right. They could have said MBUSA doesn't do enough business in California. They could have said that general, that viewing business theory of general jurisdiction is no good. They could have said you can only be subject to general jurisdiction. But I think their concession is quite consistent with the proposition that the distinction between parent and subsidiary is meaningful for jurisdictional purposes, and that you're not just automatically an agent. Kennedy, you yourself do not defend the Ninth Circuit's position that if Daimler gives enough functions to Mercedes that it has to give, that then Daimler is liable. You don't, your footnote, I think page 35 of your brief, you don't take the Ninth Circuit's reasoning to its full extent. That's right. We do think that this is an easier case because we have a wholly owned subsidiary that operates in very much the same way as a subdivision would. Notice that in the Federal law. Scalia, Mr. Russell, does it not follow from your argument that a Federal court should entertain a suit against the shareholders of a foreign corporation when that foreign corporation has sufficient contacts in California? No, I don't think it does. The question ultimately is whether it's fair to say that the defendant has sufficiently benefited from it. Why is it any less fair? Because unlike a shareholder, a parent company enjoys not only the economic benefits of the subsidiary's activities and services. Don't the shareholders? They enjoy a partial limit. But in addition, they have, the parent has the right and here the substantial right to control the data they have. Don't the shareholders? No, they don't. Don't the shareholders have the right to do is appoint the people to the board? Here, Daimler exercised a degree of control that is much more significant than that. Scalia, I can't see a distinction. And I think if you stretch the California statute as far as you're stretching it, you have to assume that California would exercise jurisdiction in that case. I don't think that's right. If you're the Ninth Circuit. I don't think that's right. I mean, this Court has recognized that, look, the Due Process Clause requires ultimately drawing some lines, but it can't be done in a mechanical way. Here, Goodyear provides a safe harbor to companies that want to make sure that they are not subject to general jurisdiction in California. They can do so by selling their cars to an independent distributor, the way Petitioner used to do and the way that Toyota still does. But with respect to the Ginsburg, if you go back to the foundation case of International Shoes, that case recognized that you can be an agent for one purpose, but not for another. So the people, the salesmen who were promoting the sales of shoes were the agents of International Shoes for the purpose of promoting the sale of shoes. They were not an all-purpose agent for the purpose of, say, dealing real estate dealings on behalf of the corporations. So you could have an agency for one purpose, selling cars in California, but totally unrelated to torturing people in Argentina. That's right. But I think that we need to separate the two ideas of what does it take to make Petitioner at home in California. Once it's established that it is at home in California, it is simply a traditional aspect of general jurisdiction that it will be subject to suit for things that happened abroad. If this suit had been brought against Apple Computer, which is headquartered in California, I don't think we would be here today. The question here is whether the conduct in California is rendered insufficient by virtue of the fact that it was undertaken by a subsidiary. Breyer, this is the same problem, and I don't know what to do. It's really, Justice Scalia has been mentioning this problem. You're seeing it through the lens of jurisdiction. I'm not. I'm seeing it through the lens of corporate law. Five shareholders get together from outside California and they set up a corporation in California. Why? To insulate themselves from liability, particularly lawsuits. Now, instead of those five shareholders, everything is the same, but now it's a German corporation, and suddenly they can't insulate themselves from the lawsuits in California. I think it unlikely that California would have such a corporate law, whether it goes by the name of jurisdiction or some other name. But that's a State law question. So what am I supposed to do? That's where we started this argument. And that's where I started. Yeah. If you think that the proper resolution of a case like this turns on issues that were not preserved below and have not been argued here, then you can do one of two things. You can dismiss the case as improvidently granted, or you can decide the case on the assumptions upon which it's been litigated and make clear that you're doing that. Well, another thing we could do is we could say we've decided now two cases that seem to bear on this, and one is Goodyear and the other is Kiobel. And we could say we'll send it back for consideration of this case in light of those. We would have no problem with that if you made clear that it was open to us on to remand to argue that they didn't preserve these arguments. That would be a fine result for us. Roberts I'm sorry, Chief. Roberts You mentioned Kiobel. Do you still think you have a viable claim under Kiobel, or haven't you conceded that? We are not prepared to concede that at this point, although we recognize we have an uphill struggle to fit ourselves within the exception that's been left. Principally, our argument would be based on the fact that at the time of suit this was a dual American-German company with dual headquarters in the United States, which is different than Shell. But we're not prepared to concede it, but we're not asking for it. Scalia If this is, as Justice Breyer and I seem to think, a question of State law, don't you think it's extraordinary that the Ninth Circuit could make such a significant holding on California law without — there is a certification procedure in California, isn't there? Roberts There is. Although — Scalia Why wouldn't they have asked the California Supreme Court whether this jurisdiction statute was meant to alter corporate law or, you know, tort law or, you know, just imagine any change in law that would bear upon jurisdiction and all those changes must be assumed to have happened. Couldn't they ask that? Is that what this California jurisdictional statute means? Roberts Sure, they could have asked that. Usually, they only ask those questions. Scalia Is it too late to ask it now? Roberts It wouldn't be if you sent it back. I mean, usually courts of appeals don't ask those questions unless somebody asks them to, and here Petitioner never asked them to. It assumed, as did we, that the statute meant that they wanted the most permissive attribution rule that's permitted by the Due Process Clause. And I don't think it's unreasonable. That's an unreasonable interpretation of the statute. I recognize that it's a little bit problematic that these statutes don't give greater definitive guidance, but Petitioner hasn't complained about that either. And so on the premises on which this case was litigated, I do think you can decide this case by resolving two questions. First, on the assumption that if MBOSA's contacts are attributable to Petitioner, they are sufficient to make it at home, does the fact that those contacts are through a wholly owned subsidiary rather than a subdivision make the exercise of general jurisdiction improper? Alito, if we assume, for the sake of argument, that there isn't a preservation issue regarding this in-home, this at-home question, why shouldn't the rule be that unless a corporation is incorporated in the jurisdiction or has its principal place of business in the jurisdiction, the acts of a subsidiary are not attributable unless it's an alter ego. It's a nice, clean rule. Many of the prominent scholars in this area think that the American doctrine of general jurisdiction doesn't serve any good purpose now that specific jurisdiction has been expanded, it makes us an international outlier. Why shouldn't we have a nice, clear rule like that, and everybody will know exactly where things stand? Just to be clear, there are two parts to that rule. There is one that's the assertion that ordinarily you're only at home in the place of principal business or principal place of business or your place of incorporation. And the other is, oh, we'll only apply that rule with respect to subsidiary contacts. That additional thing which is necessary to shoehorn it into this case I think is very artificial. If this Court is going to do that, we will only apply that rule if the contacts of the, if I understand Justice Alito's proposal, we will only apply that rule if the contacts in the State are through a subsidiary. That's a very artificial gerrymander, honestly, to fit the facts of this case. If this Court is going to say that the doing business theory of general jurisdiction is no longer good law, it should do so directly. It should do so in a case when that's actually been briefed. It hasn't been briefed here. Ginsburg. You did say in your brief that recognizing that other nations are highly critical of our expansive, our one-time expansive notion of doing business as a basis for general jurisdiction is not going to account as a basis for constitutional decision-making. And yet, what we're talking about is a notion of whether it's fair and reasonable to require a corporation to answer in a forum. And is what the other countries think unenlightening on what's fair and reasonable? I don't know that you can't take it into account at all, but I will say that the constitutional test is whether it's consistent with traditional notions of fairness and justice, meaning traditional American notions of substantial fairness. Kagan. Well, Mr. Russell, how would you make the argument, and again, with Justice Alito, sort of putting these waiver questions aside for a second? German Corporation, incorporated in Germany, headquartered in Germany, 2.4 percent of its sales are in California. How do you argue that it's subject to jurisdiction, general jurisdiction, not specific jurisdiction, general jurisdiction, which means oversuits that have nothing to do with California or, indeed, as here, over in the United States, have nothing to do with anything that happened in the United States? How do you make the argument that Daimler is subject to general jurisdiction? I would say a couple of things. I haven't briefed this, but this is what I would say in a brief if we had the opportunity to brief it, and that is it's done billions of dollars in business in California. It's 2.4 percent of its sales. That would make it subject to general jurisdiction every place. But the problem is a corporation shouldn't be jurisdictionally better off simply because it's bigger than its competitors who are smaller and therefore necessarily do a bigger portion of their business in a smaller number of places. I think there's a very significant fairness problem with the proportionality test suggested by the government, again, never raised in this case. Nobody ever argued that MBUSA didn't do enough business in California. And, in fact, it's done billions of dollars in business there, and it's enjoyed the benefits of being in this State, of doing business in this State, to a far greater degree than many of its competitors, say Tesla, which is subject to general jurisdiction for suits for anything that it does anywhere in the world. If it's subject to general jurisdiction in California, is it subject to general jurisdiction in all 49 other States? I think there would still be a question of whether they would be able to raise the arguments that they haven't raised in other jurisdictions. It may be that the billions of dollars that they do in business in California is enough, but the few millions of dollars they do in Iowa is not. So everybody is subject to general jurisdiction in, like, California and New York and Florida, because they're big markets, but no worries about, you know, Delaware? That may be the result, if the case, if, you know, the Court has always recognized that doing business is enough. Back to the Barrow case, when just having an office, a sales office. Another case that this Court cited in Perkins and cited in International Shoe as an example of a paradigmatic case was a case called Tauzo by then-Judge Cardozo. And it was a suit by somebody from New York, sued in New York, sued a Pennsylvania corporation, and the justification was it had a sales office in New York. Now, if this Court thinks that those cases were wrong, if it thinks that we need to change our conceptions of general jurisdiction in light of evolved models of jurisdiction of the state. Ginsburg. Isn't that exactly what Goodyear held? No. Goodyear didn't purport to change anything. I know you used a new phrase to describe the prior precedent, but it wasn't purporting to revise it. And I don't think that there was substantial argument in that case on that. There would hardly be room for a decision next to Goodyear that says, oh, for general jurisdiction, we have to have some subsidiary operating in this State. The whole idea of Goodyear was to say there is one place you can always sue a corporation, one or two, a place of incorporation, a principal place of business. Well, again, if I can just respond to that idea, the one consequence of that, and getting back to what I would say to Justice Kagan, is people aren't subject to general jurisdiction only in one or two places. They are subject to general jurisdiction anywhere they set foot and are served with process. And I think it is quite unfair to say that. But people can be in only one place at a time. But they go a lot of places over time. And as a consequence, they are, in fact, in the course of living their lives or even doing business in an unincorporated form, subject to general jurisdiction in a lot of places. Again, this is an important question. It hasn't been briefed in this case. It wasn't preserved below. And I think that you ought to decide the case on the grounds, on the premises of which it's been litigated for 8 years. And if you can't do that, you ought to dismiss the case as improvidently granted or at least remand the case to allow a full airing of these issues in an appropriate forum. If this 2.4 percent figure is important, wouldn't we get into impossible line-drawing problems? What if it was 1.4 percent? Well, you do get into line-drawing problems in this area. This Court has recognized that. Even in specific jurisdiction cases. Scalia, you think it should be billions of dollars, right? Forget about the percentage, right? I think billions of dollars is enough. So we've got to pick a dollar amount rather than a percentage. Well, you have to pick some metric. I mean, this Court's cases have always been general. They've talked about minimum contacts. They've talked about systematic and continuous business operations in the State. And the Court has always recognized that those are not standards that are capable of mechanical operation or bright-line rules. If you think that you need to develop some new standards, you ought to do it in a case when it's squarely presented and adequately briefed. If there are no further questions. Roberts. Thank you, counsel. Mr. Dupree, you have four minutes remaining. Just a few brief points. First, with regard to Justice Breyer's question about remand, I think there is absolutely no reason for this Court to remand this case to the Ninth Circuit. The issues as to attribution were fully briefed below. They are fully briefed here. I think that were this Court to either remand the case or dismiss the case, for one thing, the circuit split would persist. The Ninth Circuit's decision in the event of a remand would remain on the books, even if this Court were to remand the decision in the Second Circuit, which implies that. Sotomayor, given that so many issues have not been adequately briefed, conceded when they are obviously fallacious and unsupportable, why don't we just say simply that the exercise of jurisdiction was unreasonable in this case? Well, Justice Sotomayor. Neither you or the other side have argued that there isn't a reasonableness component. I know some of my colleagues don't think there is, but both of you have proceeded in your briefing as if there is. Do you care how you win? Well, yes, Your Honor. I think we do. I think we do. And let me say this. I think that with regard to Your Honor's points about issues being waived or forfeited below, the only issue that even arguably, even arguably was forfeited below is the discrete question as to whether Mercedes-Benz itself is subject to general jurisdiction in California. The question that Justice Kagan and others were inquiring about, namely, that even were one to accept the attribution theory and evaluate Daimler as a joint enterprise, would that render the combined enterprise at home in California? We plainly did not waive or forfeit that question. In fact, we expressly addressed it in our opening brief, and we have been fighting in this case from day one to argue that even if you were to attribute the context, there is no basis for jurisdiction over Daimler. That question is squarely presented for this Court's review. I also think that, as Justice Ginsburg and others have noted, there has been some confusion in the lower courts over the distinction between specific jurisdiction and general jurisdiction. This Court saw it in Goodyear, for example, and I think that were this Court to resolve this case on the ground that Justice Kagan suggested or Justice Alito suggested, namely, that a corporation cannot be at home outside of the areas where it maintains its principal place of business or is incorporated, that it can't be subject to general jurisdiction anywhere else. That would be a clean rule. It would be a workable rule. I think it's fully consistent with what the Court said in Goodyear, and it would provide clarity and guidance to the lower courts and eliminate the circuit split that currently exists over agency jurisdiction. A couple other quick points. Justice Scalia, I regret to report that neither the parties nor the courts below reproduced the text of the California statute. The Solicitor General, however, to his credit, did on page 4 of his brief. It simply says that California may exercise jurisdiction on any basis not inconsistent with the constitutions of California or the United States. And the Ninth Circuit panel on page 19A of the Petitioner's Appendix said that, therefore, the question in this case is simply whether the exercise of jurisdiction would exceed the permissible bounds of due process. The last point I want to make, and we've been discussing legal issues, is just to remind the Court of the facts of this case. This is a case involving Argentine plaintiffs suing a German corporation based on events that allegedly occurred in Argentina more than 30 years ago. This case has no connection to the United States, and it has no business in a California courtroom. The Ninth Circuit's contrary conclusion is indefensible, and for that reason we ask that the judgment be reversed. Roberts. Thank you, counsel. Counsel, the case is submitted.